1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

JOHN A. HUNTER,

                    Plaintiff,

          v.

CNA GROUP LIFE ASSURANCE
COMPANY,

                    Defendant.

CASE NO. C04-969JLR

ORDER

## I.    INTRODUCTION

This matter comes before the court on Plaintiff John Hunter and Defendant CNA Group Life Assurance Company's ("CNA") cross-motions for review of the administrative record (Dkt. ## 12, 13).  Hunter seeks an order reversing CNA's termination of disability benefits, compelling back payment of benefits from CNA since May 30, 2003,[1] and awarding prejudgment interest on any unpaid benefits.  CNA, on its own motion, asks the court to uphold its decision denying Mr. Hunter long term disability benefits.  Having read and considered the papers filed in support of and opposition to these motions, and having heard oral argument, the court DENIES both motions and orders a bench trial.

_____

[1]CNA paid Mr. Hunter a conditional benefit through May 30, 2003.

ORDER – 1

## II.   BACKGROUND

Mr. Hunter is a 60 year-old man who worked as a construction superintendent for many years before quitting work due to recurring problems with rheumatoid arthritis, irritable bowel syndrome, diverticulosis, and depression.  CNA 058.[2]  Upon leaving work, Mr. Hunter applied for disability benefits under his employer's Group Long Term Disability Policy ("the Plan"), which is governed by the Employee Retirement Income Security Act ("ERISA").   The Plan provides disability benefits for any *"Injury or Sickness"* that "causes physical or mental impairment to such a degree of severity" that the beneficiary is "continuously unable to perform the *Material and Substantial Duties* of *Your Regular Occupation,*" and is "not *Gainfully Employed*."  CNA 021 (emphasis in original).  The Plan requires objective medical findings to support a beneficiary's claimed disability which include, but are not limited, to "tests, procedures, or clinical examinations standardly accepted in the practice of medicine."  CNA 034.  If the administrator denies the beneficiary's claim for disability benefits, the administrator must provide a written denial letter (1) stating the specific reasons and plan provisions underlying the denial, (2) describing any additional information required, and (3) explaining the appeal process.  CNA 042.  The Plan also requires a "full and fair" review of a benefits denial.  Id.

Mr. Hunter applied for disability benefits in December 2002 and submitted medical documentation from multiple doctors to support his claim.  As part of his application, Mr. Hunter included a "Physician's Medical Certification of Illness/Injury" from his long-time treating psychiatrist, Dr. John Petrich, indicating that he suffered from depression and was incapacitated "due to pain and exhaustion."  CNA 334.  Dr. Petrich

---

[2]All record citations are to the administrative record provided by the parties.

ORDER – 2

noted that Mr. Hunter attended monthly psycho-therapy sessions and took medication for his depression.  Id.   At CNA's request, Dr. Petrich also completed a "Medical Assessment Tool" describing Mr. Hunter's primary diagnosis as major recurring depression and secondary diagnosis as chronic inflammation of the joints and bowel disease.  CNA 290.  Dr. Petrich listed Mr. Hunter's estimated return to work as "uncertain – severely handicapped."  Id.  Additionally, Dr. Petrich attached office notes to the assessment tool and consultation reports from Mr. Hunter's monthly psycho-therapy sessions.

According to internal documents from CNA, a registered nurse reviewed Mr. Hunter's psychiatric claim in February 2003 and concluded that "from [a] psychiatric point of view" the medical evidence did not "support restrictions."  CNA 081.  The disability claims representative handling Mr. Hunter's claim noted the nurse's finding in his review a week later and concluded that the "information made available to date does not appear to substantiate [claimant's] inability to perform his regular occupation."  CNA 080.  CNA never sought additional information regarding Mr. Hunter's depression claim or asked a psychiatrist to review his mental health condition.  Instead, CNA requested that its consulting physician and internist, Dr. Truchelut, review Mr. Hunter's disability claim.  CNA 207.  Although Dr. Truchelut concluded that from a "physical standpoint only, it is not clear if there are any restrictions which are supported by these medical records," he explicitly refrained from assessing Mr. Hunter's disability claim from a mental standpoint based on his inability to "assess the claimant's psychiatric disorder." Id.

On June 19, 2003, CNA issued a written letter denying Mr. Hunter's disability claim because the information provided did not substantiate a continuous inability to perform the material and substantial duties of his job as a construction superintendent.

ORDER – 3

CNA 060.  CNA concluded that the information contained in the file revealed that Mr. Hunter was able to "engage in activities that meet or exceed those involved in your position and the medical information reveals essentially normal findings."  Id.  CNA did not request additional information from Mr. Hunter regarding any of his conditions, including his depression claim.

Mr. Hunter appealed the denial of his benefits claim and submitted additional medical information, including a statement from Dr. Petrich indicating that his chronic depression worsened prior to leaving work and that Dr. Petrich told him to stop working based on his increased physical pain and aggravated depression.  Fjelstad Decl. at 2. CNA reviewed Dr. Petrich's statement and concluded that it provided "no additional medical evidence" to support Mr. Hunter's disability claim.  CNA 062.  CNA upheld its original decision, issuing a second denial letter on March 10, 2004 and explaining that "the totality of the medical evidence," including Dr. Petrich's statements, "could not be correlated to a total occupational restriction."  CNA 056.   Mr. Hunter subsequently initiated this suit against CNA for breach of fiduciary duty under 29 U.S.C. § 1132.

## III.   DISCUSSION

### A.   Legal Standard

A plan administrator's denial of benefits under an ERISA-governed plan "is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan."  Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 874 (9th Cir. 2004) (quoting Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989)).  If the plan administrator possesses discretionary authority, the court will review the benefits denial under an abuse of discretion standard and affirm the denial unless it is "arbitrary and capricious."  Id. at 875.  A decision grounded on "*any*

ORDER – 4

reasonable basis" is not arbitrary or capricious.  Id. (quoting Horan v. Kaiser Steel Ret. Plan, 947 F.2d 1412, 1417 (9th Cir. 1991) (emphasis in original) (citation omitted)). Further, the court must affirm a plan administrator's finding that a claimant is not disabled unless it is "clearly erroneous."  Id. (quoting Jones v. Laborers Health & Welfare Trust Fund, 906 F.2d 480, 482 (9th Cir. 1990)).

Assuming the Plan confers discretionary authority on its administrator, the court will apply an abuse of discretion standard of review unless a "serious" conflict of interest warrants heightening the standard of review to de novo.  Id.  To receive de novo review, the beneficiary must provide "material, probative evidence, beyond the mere fact of the apparent conflict,[3] tending to show that the fiduciary's self-interest caused a breach of the administrator's fiduciary obligations to the beneficiary."  Id. at 875-76 (quoting Atwood v. Newmont Gold Co., 45 F.3d 1317, 1323 (9th Cir. 1995)).   A "serious" conflict of interest exists where the plan administrator (1) provides inconsistent reasons for the benefits denial, (2) provides insufficient reasons for the benefits denial, or (3) denies the claim based on procedural irregularities in the processing of the claim.  Nord v. Black & Decker Disability Plan, 356 F.3d 1008, 1010 (9th Cir. 2004).

If the beneficiary produces "material, probative evidence" of a serious conflict of interest, then the burden shifts to the plan administrator to rebut the presumption of self interest by producing evidence "that the conflict of interest did not affect the decision to deny benefits."  Friedrich v. Intel Corp., 181 F.3d 1105, 1109 (9th Cir. 1999) (quoting Atwood, 45 F.3d at 1323).  The plan administrator's failure to produce such evidence will result in the court reviewing the benefits decision de novo.  Id.  Where genuine issues of

---

[3]An apparent conflict of interest exists where "the insurance policy is both issued and administered by the same party."  Jordan v. Northrop Grumman Corp. Welfare Benefit Plan, 370 F.3d 869, 875 (9th Cir. 2004).  CNA concedes that an apparent conflict exists.

ORDER – 5

material fact exist regarding the claimant's entitlement to benefits, the district court must conduct a bench trial unless remand is appropriate.[4]  E.g., Tremain v. Bell Indus., Inc., 196 F.3d 970, 979 (9th Cir. 1999); Kearney v. Standard Ins. Co., 175 F.3d 1084, 1094 (9th Cir. 1999).  At trial, the district court may appoint an independent medical expert to help evaluate the medical evidence and consider evidence outside the administrative record[5] where "additional evidence is necessary to conduct an adequate de novo review of the benefit decision."  Walker v. Am. Home Shield Long Term Dis. Plan, 180 F.3d 1065, 1070 (quoting Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938, 944 (9th Cir. 1995)).

**B.    De Novo Review**

The Plan language provides the appropriate starting point for determining the correct standard of review in a benefits denial case under ERISA.  Walker, 180 F.3d at 1068.  Here, the Plan unambiguously confers discretionary authority on the plan administrator, providing in relevant part:

> The plan administrator and other plan fiduciaries have discretionary authority to determine *Your* eligibility for and entitlement to benefits under the Policy.  The plan administrator has delegated *sole discretionary authority* to Continental Casualty Company to determine *Your* eligibility for benefits and to interpret the terms and provisions of the Policy.

---

[4]Remand provides the proper course "when an ERISA plan administrator, with discretion to apply a plan, has misconstrued the Plan and applied a wrong standard to a benefits determination."  Saffle v. Sierra Pac. Power Co. Bargaining Unit Long Term Disability Income Plan, 85 F.3d 455, 461 (9th Cir. 1996); see also, Mongeluzo v. Baxter Travenol Long Term Disability Benefit Plan, 46 F.3d 938 (9th Cir. 1995).

[5]The evidence considered by the court in its de novo review "need not be admissible according to the strict rules for the admissibility of evidence in a civil trial, but may be considered . . . so long as that evidence is relevant, probative, and bears a satisfactory indicia of reliability."  Tremain v. Bell Indus., Inc., 196 F.3d 970, 979 (9th Cir. 1999).

ORDER – 6

CNA 040 (emphasis added).  Mr. Hunter's contention that the Plan fails to confer

discretionary authority on the administrator lacks merit.  The Plan provides the

administrator with "sole discretionary authority" to determine benefits eligibility and

interpret the Plan.  Courts have held that plans with similar language confer discretionary

authority.  E.g., Jordan, 370 F.3d at 875 (providing plan administrator with "discretion to

construe and interpret the terms of the Plan and the authority and responsibility to make

factual determinations");  McDaniel v. Chevron Corp., 203 F.3d 1099, 1107 (9th Cir.

2000) (providing plan administrator with "sole discretion to interpret the terms of the

Plan"); Friedrich, 181 F.3d at 1110 n.5 (providing plan administrator with "sole

discretion to interpret the terms of the Plan and to determine eligibility for benefits.").

Thus, the court must apply an abuse of discretion standard of review unless a "serious"

conflict of interests exists heightening the standard of review to de novo.  Id.

        Mr. Hunter contends that a "serious" conflict of interest exists based on a number

of reasons, including CNA's alleged failure to consider his depression claim and engage

in a dialogue with him, its reliance on an allegedly inaccurate job description, and

rejection of Mr. Hunter's treating physicians' diagnoses.  The court finds that CNA's

failure to consider Mr. Hunter's disability claim based on depression, as required under

the Plan and ERISA, demonstrates that CNA operated under a "serious" conflict of

interest, warranting de novo review.[6]  The Plan provides, consistent with ERISA, that any

claim denial will include a written explanation, including a "description of any additional

information [the claimant] might be required to provide and explanation of why it is

needed."  CNA 042.  Similarly, ERISA requires plan administrators to include a

_____

        [6]As a result, the court need not consider Mr. Hunter's additional bases allegedly evincing a
"serious" conflict of interest.

ORDER – 7

description of "any additional material or information necessary for the claimant to perfect the claim and an explanation of why such material or information is necessary" in a benefits denial letter.  29 C.F.R. § 2560.503-1(g)(1)(iii).  "[I]f the plan administrators believe that more information is needed to make a reasoned decision, they must ask for it."  Booton v. Lockheed Med. Benefit Plan, 110 F.3d 1461, 1463 (9th Cir. 1997).

Here, CNA denied Mr. Hunter's disability claim based on depression despite evidence from Dr. Petrich that Mr. Hunter suffered from major recurring depression, was "severely handicapped,"[7] and should stop working due to increased physical pain and aggravated depression.  CNA 290; Fjelstad Decl. at 2.  CNA never sought additional information from his treating physician clarifying his diagnosis or mental limitations. Further, CNA never sought the opinion of a mental health professional while reviewing Mr. Hunter's claim of depression.  Indeed, it appears from the record that the only CNA healthcare provider that reviewed Mr. Hunter's claim was a registered nurse, in contrast to Dr. Truchelut, CNA's consultant and internal medicine specialist, who reviewed Mr. Hunter's rheumatoid arthritis, irritable bowel syndrome, and diverticulosis claims. CNA's denial of Mr. Hunter's disability claim based on depression, without any psychiatric evidence in the record to the contrary, constitutes "material, probative evidence" of a serious conflict of interest.  Nord, 356 F.3d at 1010; contra Jordan, 370 F.3d at 877-78 (concluding "serious" conflict of interest did not exist where plan administrator sought additional explanatory information from beneficiary's treating physicians about her condition and had trained specialists review beneficiary's medical history).

---

[7]It is unclear from the record whether Dr. Petrich's statement that Mr. Hunter is "severely handicapped" refers to his mental and/or physical condition.  CNA 290.

ORDER – 8

In response, CNA argues that Mr. Hunter did not claim disability due to depression, and that even if he did, he failed to submit any objective medical evidence to substantiate his claim.  Neither argument satisfies CNA's burden to bring forth sufficient evidence to rebut the presumption that the "serious" conflict of interest did not affect its decision to deny benefits.  <u>Friedrich</u>, 181 F.3d at 1109.  CNA conceded at oral argument that Mr. Hunter's disability claim included depression.  <u>E.g.</u>, CNA 055, 058 (CNA's denial letters acknowledging disability claim due to depression).

CNA's alternative argument, raised for the first time in this litigation, lacks merit. CNA argues that Mr. Hunter failed to submit objective medical evidence of disability due to depression, such as test results from the WAIS-R, the WRAT-3, the Mental Status Checklist, the Bender Gestalt Test, Beck's Depression Inventory, Symptom Checklist 90-R, and the Rotter Incomplete Sentences Test.  Yet, CNA never requested formal testing or suggested that it was required.  CNA's denial letters are devoid of any reference to Mr. Hunter's alleged failure to support his depression claim with "objective medical evidence" or formal test results, despite the Plan and ERISA requirement compelling plan administrators to describe any additional information "necessary for the claimant to perfect the claim."  29 C.F.R. § 2560.503-1(g)(1)(iii); CNA 042.  Although Dr. Petrich offers only terse statements regarding Mr. Hunter's mental condition, his statements provide the only psychiatric evidence in the record and qualify as objective medical evidence supporting a disability claim under the Plan.  CNA 034 ("Objective medical findings include but are not limited to tests, procedures, or clinical examinations standardly accepted in the practice of medicine").  Consequently, the court finds that CNA has failed to satisfy its burden to produce evidence rebutting the presumption of self-interest and will review Mr. Hunter's disability claim de novo on a bench trial. <u>Walker</u>, 180 F.3d at 1071 ("remand for a bench trial is now required if there is 'a genuine

ORDER – 9

issue of material fact as to whether [the party seeking disability benefits under ERISA] is disabled in the sense defined by the policy.'") (quoting <u>Kearney</u>, 175 F.3d at 1093).

Based on the limited psychiatric evidence in the record of Mr. Hunter's depression, the court finds that "additional evidence is necessary to conduct an adequate de novo review of the benefit decision." <u>Walker</u>, 180 F.3d at 1070 (quoting <u>Mongeluzo</u>, 46 F.3d at 944). The parties may conduct discovery and submit additional evidence at trial regarding Mr. Hunter's depression claim only. The administrative record contains sufficient evidence of Mr. Hunter's rheumatoid arthritis, irritable bowel syndrome, and diverticulosis claims.

## IV.   CONCLUSION

Given that a genuine issue of material fact exists for trial, the court DENIES the parties' cross-motions for review of the administrative record (Dkt. ## 12, 13) and orders a two-day bench trial to commence on August 18, 2005. The clerk is directed to issue a scheduling order establishing the appropriate deadlines.

Dated this 18th day of May, 2005.

JAMES L. ROBART
United States District Judge

ORDER – 10